**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 180209-U

Order filed April 6, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Circuit No. 08-CF-861 |
| DANIEL L. HUIZAR, | ) ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Defendant established cause and prejudice to warrant leave to file his successive postconviction petition.

¶ 2    Defendant, Daniel L. Huizar, appeals from the Will County circuit court's denial of his motion for leave to file a successive postconviction petition. Defendant argues the court erroneously denied his motion because it established sufficient cause and prejudice to permit the filing of a successive postconviction petition. We reverse and remand.

¶ 3                                     I. BACKGROUND

¶ 4          On May 15, 2008, the State charged defendant, Daniel L. Huizar, by indictment with

three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2008)), and one

count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). The indictments alleged that

defendant, without lawful justification, shot Alfredo Lopez, causing his death. At the time of the

offenses, defendant was 18 years old. The case proceeded to a bench trial.

¶ 5          The evidence at trial showed that on April 16, 2008, Nicholas and Nathan Lopez went to

Walgreens with their father, Alfredo. They heard several gunshots while walking from the

parking lot to the store. Alfredo was struck in the back by a stray bullet and later died at the

hospital.

¶ 6          On that same day, defendant worked with Julio Perez, Pedro Sanchez, and Reyes

Velasquez at a Subway restaurant near the Walgreens where Alfredo was shot. When Velasquez

ended his shift, he and Miguel Garcia waited in defendant's vehicle for defendant to finish his

shift. The vehicle was parked in the Subway parking lot. Both Velasquez and Garcia were

members of the Latin Kings street gang. While sitting in defendant's vehicle, Jose Aguirre,

Sergio Garcia, Juan Ornelas, Erik Perez, and Fabian Vargas, several men who were members of

the rival Vice Lords street gang, approached defendant's vehicle and challenged Velasquez and

Garcia to a fight. The men came to Subway because they had heard that members of the Latin

Kings worked there. Two men entered the restaurant and argued with defendant. One of the men

threw a chair at defendant's vehicle. All five men left and walked toward Walgreens. Defendant

retrieved a gun that he had recently purchased for protection. Defendant fired several shots in the

direction of Walgreens. One of defendant's bullets hit Alfredo, causing his death.

¶ 7        The court found defendant guilty of three counts of first degree murder and aggravated discharge of a firearm.

¶ 8        Defendant's presentence investigation report (PSI) indicated that defendant was 18 years old at the time of the offense and had no prior criminal record. Defendant held fairly consistent employment and had obtained his general education diploma.

¶ 9        At sentencing, the State entered a victim impact statement from Araceli Lopez, Alfredo's wife, and affidavits and grand jury testimony related to the indictments for Aguirre, Garcia, Ornelas, Perez, and Vargas. The State argued in aggravation that defendant's actions led to the death of an innocent bystander. The State highlighted the nature of the offense and noted the seriousness of gun violence. The State requested a lengthy sentence to deter others from committing the same crime.

¶ 10        Defense counsel presented the testimony of Ynes Hernandez, defendant's mother. Growing up, defendant resided with Hernandez in several locations before returning to Joliet to live with his father. In one location, defendant was suspended for bringing a pocketknife to school. Hernandez learned that defendant had been living out of his car for several weeks prior to the murder. Counsel argued in mitigation that defendant's codefendants received lesser sentences and were not subject to the 25-year firearm enhancement. Further, defendant acknowledged his guilt and expressed remorse. Counsel contended that defendant acted under a strong provocation that was induced or facilitated by others. Counsel noted that defendant had no criminal history and a high likelihood of rehabilitation.

¶ 11        In allocution, defendant indicated that he believed that he acted in self-defense, but he felt remorse for his actions that caused the death of an innocent person.

¶ 12        The court considered the parties' arguments, trial evidence, defendant's PSI, sentencing exhibits, and the victim impact statement from Araceli. The court noted that defendant faced an overall minimum sentence of 45 years' imprisonment, comprised of a minimum sentence of 20 years' imprisonment for first degree murder and a mandatory 25-year firearm enhancement. The court found that defendant possessed rehabilitative potential and sentenced defendant to the minimum term, 45 years' imprisonment. Defendant appealed and argued the evidence was insufficient to prove his guilt and that the court should reduce his conviction to second degree murder. We affirmed. *People v. Huizar*, 2014 IL App (3d) 120572-U.

¶ 13        Defendant filed a postconviction petition as a self-represented litigant. The circuit court summarily dismissed defendant's petition, and we affirmed the dismissal. *People v. Huizar*, No. 3-15-0244 (2017) (unpublished dispositional order).

¶ 14        Defendant filed a motion for leave to file a successive postconviction petition and a proposed successive petition. The proposed successive petition alleged, *inter alia*, that defendant's mandatory sentence was unconstitutional as applied to him under *Miller v. Alabama*, 567 U.S. 460, 479-80 (2012) and its progeny. The court denied defendant leave.

¶ 15                                II. ANALYSIS

¶ 16        On appeal, defendant argues the court erroneously denied him leave to file a successive postconviction petition. The Post-Conviction Hearing Act (Act) permits a criminal defendant to challenge the proceedings which resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of a single postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 42. A defendant must obtain leave of court to file a successive postconviction petition. *People v. Wrice*, 2012 IL

4

111860, ¶ 47; *Robinson*, 2020 IL 123849, ¶ 43; 725 ILCS 5/122-1(f) (West 2018). To obtain leave, the defendant must allege either (1) "cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding" or (2) "a fundamental miscarriage of justice based on actual innocence." *Robinson*, 2020 IL 123849, ¶ 42. Cause has been defined as " ' "some objective factor external to the defense [that] impeded counsel's efforts" to raise the claim' " in a prior proceeding. *People v. Flores*, 153 Ill. 2d 264, 279 (1992) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991), quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is defined "as an error which so infected the entire trial that the resulting conviction violates due process." *People v. Jones*, 191 Ill. 2d 194, 199 (2000). " '[L]eave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner,' that the petitioner's claims fail as a matter of law." *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Edwards*, 2012 IL 111711, ¶ 24).

¶ 17        Defendant argues the court erred in denying his motion for leave to file a successive postconviction petition because he established cause and prejudice. Specifically, he established cause for failing to raise his *Miller* claim in a prior proceeding because the case law surrounding sentencing requirements for juveniles and emerging adults was still evolving. See *People v. Reyes*, 2016 IL 119271, ¶¶ 7-8 (the court extended *Miller* to require courts to consider youth and its attendant characteristics before imposing a *de facto* life sentence); *People v. Holman*, 2017 IL 120655, ¶ 40 (*Miller* applies to both mandatory and discretionary life sentences); *People v. Barnes*, 2018 IL App (5th) 140378, ¶¶ 26-27 (finding the mandatory firearm enhancement violated the proportionate penalties clause for juvenile offenders); *People v. Buffer*, 2019 IL 122327, ¶ 41 (holding that sentences above 40 years were *de facto* life sentences). Defendant argues that he established prejudice because he was 18 years old when he committed the offenses

5

and was sentenced to a *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶ 42. Defendant also cites to the First District's decision in *People v. House*, 2019 IL App (1st) 110580-B, ¶¶ 60-62, 65, which extended the *Miller* protections to a young adult offender. Since defendant filed his brief, the supreme court granted a petition for leave to appeal in *House*. *People v. House*, 2021 IL 125124, ¶ 3. We held the instant case pending the supreme court's decision in *House.*

¶ 18　　　　In *House*, a 19-year-old defendant argued for the extension of the *Miller* protections to young adults. Defendant was convicted on an accountability theory of first degree murder and two counts of aggravated kidnapping. *Id.* ¶ 5. The circuit court sentenced defendant to a mandatory natural life sentence for murder and a consecutive 60 years' imprisonment for each aggravated kidnapping conviction. *Id.* Defendant filed a postconviction petition, arguing that his mandatory natural life sentence violated the proportionate penalties provision of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *House*, 2021 IL 125124, ¶ 7. The circuit court dismissed defendant's petition. *Id.* The appellate court vacated defendant's mandatory natural life sentence, finding that it violated the Illinois proportionate penalties provision and remanded for resentencing. *Id.* ¶ 9. Our supreme court reversed the First District's ruling, finding that defendant did not provide any evidence

> "relating to how the evolving science on juvenile maturity and brain development applies to his specific facts and circumstances. As a result, no evidentiary hearing was held, and the trial court made no factual findings critical to determining whether the science concerning juvenile maturity and brain development applies equally to young adults, or to petitioner specifically." *Id.* ¶ 29.

The supreme court remanded the case to the circuit court for second-stage postconviction proceedings. *Id.* ¶ 32.

6

¶ 19 Here, defendant has not provided any evidence regarding how the evolving science on juvenile brain development applied to him at the time of the murder. *House* left unanswered the question of whether the *Miller* considerations or juvenile sentencing statutes apply to emerging adults. However, like *House*, we must remand the cause for second-stage postconviction proceedings. See *id.* Under the supreme court's decision in *House*, defendant has established cause and prejudice to warrant leave to file a successive postconviction proceeding.

¶ 20 III. CONCLUSION

¶ 21 The judgment of the circuit court of Will County is reversed and remanded.

¶ 22 Reversed and remanded.